Dear Mr. Hammonds:
I am in receipt of your request for an Attorney General's opinion on behalf of the West Baton Rouge Parish School Board wherein you seek an opinion as to whether equipment which is owned by a school system can legally be "loaned" to the parents of a child with exceptionalities if the educational programs for those students do not require some utilization of it. You ask this question in light of the prohibition contained in Article 7 Section 14(A) of the Louisiana Constitution.
You state the following in your request:
 There are many students who need assistive technology devices at school in order to obtain a free appropriate public education, and, under these circumstances, such devices must be provided by the school system. The school system purchases the equipment and makes it available for the students for use during the school day. Some devices (e.g. augmentative communication devices, computers, etc.) are very expensive and are difficult to get serviced if they break or are damaged.
 The parents of some special education students have begun requesting that the assistive technology devices used with students pursuant to their IEP, be sent home with their children so that they can use such equipment during evenings, weekends, and school holidays as well.
LSA-R.S. 17:1941 et seq. addresses Educational Opportunities for Children with Exceptionalities and sets forth a declaration of public policy which states:
 It is and shall be the duty of state and local educational agencies of the state of Louisiana to provide a free appropriate public education to every child with an exceptionality who is a resident therein.
* * *
(See 20 U.S.C. § 1400).
LSA-R.S. 17:1943(2) and (3) defines "Assistive technology device" and "Assistive technology service" as follows:
 (2) "Assistive technology device" means any item, piece of equipment, or product system, whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve functional capabilities of a child with a disability.
 "Assistive technology service" means any service that directly assists a child with a disability in the selection, acquisition, or use of an assistive technology device. Such term includes the evaluation of the needs of such child, including a functional evaluation of the child in the child's customary environment; purchasing, leasing, or otherwise providing for the acquisition of assistive technology devices by such child; selecting, designing, fitting, customizing, adapting, applying, maintaining, repairing, or replacing of assistive technology devices; coordinating and using other therapies, interventions, or services with assistive technology devices, such as those associated with existing education and rehabilitation plans and programs; training or technical assistance for such child or, where appropriate, the family of such child; and training or technical assistance for professionals including individuals providing education and rehabilitation services, employers, or other individuals who provide services to, employ, or are otherwise substantially involved in the major life functions of such child.
These definitions are derived from 20 USC § 1401(1) and (2) and34 CFR § 300.5 and § 300.6.
LSA-R.S. 17:1945 requires an evaluation by a multidisciplinary team to be conducted before any action is to be taken with respect to the initial placement or denial of placement of a child in special education and related services or the determination that a child is no longer a child with an exceptionality subject to diagnostic and evaluation procedures.
LSA-R.S. 17:1945(C)(2) defines an "individualized education program" or "IEP" as:
 . . . A written statement for each child with an exceptionality that is developed, reviewed, and revised in accordance with this Chapter
LSA-R.S. 17:1945(C)(2)(c) sets forth what is required in an "IEP" which includes:
 A statement of the special education and related services and supplementary aids and services to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child to advance appropriately toward attaining the annual goals; to be involved and progress in the general curriculum in accordance with this Paragraph and to participate in extracurricular and other nonacademic activities; and to be educated and participate with other children with exceptionalities and nonexceptional children in the activities provided in this Paragraph.
(See 20 USC § 1414(a)(1)(A), (d)(1)(A), (d)(1)(A)(iii))
LSA-R.S. 17:1948 addresses the requirements that the local educational agencies must meet in order to be eligible to receive financial assistance pursuant to this chapter. LSA-R.S. 17:1948(A) provides:
 Each local educational agency receiving assistance for the provision of education to children with disabilities within its jurisdiction must have in effect policies, procedures, and programs that are consistent with the state policies and procedures established under the Individuals with Disabilities Education Act (IDEA). Each of the agencies within the jurisdiction of the state Department of Education must have on file with the department information to demonstrate that the requirements of Part B of the Individuals with Disabilities Education Act are consistent with state policies and procedures.
LSA-R.S. 17:1948(I) addresses the replacement or repair of any assistive technology device. It states:
 No local educational agency or child net service provider shall be required to replace or repair any assistive technology device provided through the local educational agency or child net service provider to a child with a disability if such device is lost, stolen, damaged, broken, destroyed, or otherwise misused while in the possession of the child, parent, or guardian. This Subsection does not apply to replacement or repair of such a device which needs repair or replacement as a result of ordinary wear.
34 CFR § 300.308 specifically states that assistive technology services are required to be available to a child for home use under certain circumstances. It provides:
 Each public agency shall ensure that assistive technology devices or assistive technology services, or both, as those terms are defined in §§ 300.5 300.6, are made available to a child with a disability if required as a part of the child's —
Services under Special Education under § 300.26;
Related services under § 300.24; or
 Supplementary aids and services under §§ 300.28 and 300.550(b)(2).
 On a case-by-case basis, the use of school-purchased assistive technology devices in a child's home or in other settings is required if the child's IEP team determines that the child needs access to those devices in order to receive FAPE.
34 CFR § 300.22 defines the term public agency to include Local Educational Agencies. 34 CFR § 300.308(a) specifies the circumstances in which each public agency is required to ensure that assistive technology devices or assistive technology services are to be made available to a child.34 CFR § 300.308(b) states that the use of school-purchased assistive technology devices in a child's home is required if the child's IEP team determines that the child needs access to those devices in order to receive FAPE. Therefore, unless a child's IEP team determines that the child needs access to assistive technology devices in his or her home, a local educational agency is not required under federal law to provide such.
Article 7, Section 14(a) of the Louisiana Constitution of 1974 states the following concerning the donation, loan or pledge of public credit:
 Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
This section of the constitution is applicable to situations in which the state or a political subdivision has no obligation to perform a function that requires the loan of public property. As stated by the Louisiana Supreme Court in City of Port Allenv. Louisiana Municipal Risk Management Agency, Inc., et. al, La. Const. Art. VII § 14 is violated when the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. 439 So.2d 399 (La. 1983). The Louisiana Civil Code defines an obligation as a legal relationship whereby an obligor is bound to render performance which may consist of giving, doing or not doing something. La. Civil Code Art. 1756. An obligation can arise directly from law. La. Civil Code Art. 1757.
In the facts at issue, an obligation to perform a function that requires the loan and/or use of public property may be created by two sources of law. 34 CFR § 300.308(b) creates a legal obligation of a local educational agency to provide a child with home use of assistive technology devices if the conditions therein are met, i.e. a child's IEP team determines that the child needs access to assistive technology devices in his or her home. Therefore, the West Baton Rouge Parish School Board would not be in violation of La. Const. Art. VII § 14 in the fulfillment of its obligation created by 34 CFR § 300.308(b).
A second source of law that may create an obligation is found in a school board's general obligation to educate. School boards are provided by the laws and Constitution of Louisiana to provide for the education of the people of the state. This legal purpose is an obligation. As part of this obligation, school boards permit the general use of facilities, equipment, materials and supplies by its students. The home use of assistive technology devices may or may not fall within a school board's general obligation to educate. This office has opined, as it relates to financial support to individual students, that if an activity is 1) educational in nature and 2) integral to the established educational programs of the school system, the use of public funds would be within the lawful educational purpose of the school board and does not violate La. Const. Art.VII § 14. See Atty Gen. Op. Nos. 89-367 and 93-418. We believe that this test is applicable in determining if the home use of assistive technology devices falls within a school board's general obligation to educate. This test must be applied by a school board to the various factual scenarios it is presented with when assessing the needs of individual students.
If a school board determines that the home use of assistive technology devices is integral to a child's educational program and restricts home use to educational purposes, the home use of such devices would be within the lawful educational purposes of the school board and not in violation of La. Const. Art. VII § 14.
It is therefore the opinion of this office that only if the West Baton Rouge Parish School Board is under no obligation to loan assistive technology devices to students for home use would loaning such devices result in a violation of La. Const. Art. VII
§ 14. An obligation to loan assistive technology devices to students for home use may arise under 34 CFR § 300.308(b) or as a result of the school board's general obligation to educate.
I hope this opinion sufficiently addresses your concerns. If I may be of further assistance, please let me know.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY:_____________________________
 KATHERINE M. WHITNEY ASSISTANT ATTORNEY GENERAL
CCF, Jr.:KMW